## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BRITTON HAMILTON** | * | **CIVIL ACTION NO: _____** |
| | * | |
| **VERSUS** | * | **JUDGE: _____** |
| | * | |
| **CITY OF NEW ORLEANS** | * | |
| | * | **MAGISTRATE: _____** |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## COMPLAINT AND REQUEST FOR DECLARATORY RELIEF
## WITH JURY DEMAND

Plaintiff, Britton Hamilton, through undersigned counsel, files this Complaint against Defendant, the City of New Orleans (Sometime referred to herein as "the City", "NOPD" or "Defendant") for violations under Title VII of the Civil Rights Act 1964 and avers as follows:

## INTRODUCTION

A question asked in the NOPD application process: "How do your parents feel about your transition?"

Britton Hamilton is a transgender male who transitioned from the female gender to the male gender. On June 17, 2020, Mr. Hamilton applied to the NOPD for a police officer position. Mr. Hamilton immediately began the recruitment process with NOPD. Mr. Hamilton received a Conditional Offer of Employment on December 14, 2020. Following the Conditional Offer, Mr. Hamilton underwent a psychological exam by Kathryn Lawing, PhD, a psychologist hired by the NOPD and a medical exam. In that psychological exam, Dr. Lawing asked questions in violation of Mr. Hamilton's rights protected under Title VII of the Civil Rights Act. The psychological and medical examinations revealed to the NOPD that Mr. Hamilton is a transgender male. After learning of his protected status, the NOPD rescinded its Conditional Offer on January 26, 2021.

Mr. Hamilton now seeks to remedy NOPD's denial of his offer to be hired as an NOPD officer in violation of his civil rights premised on his protected status as a transgender man.

## PARTIES

1.

Plaintiff, Britton Hamilton ("Mr. Hamilton"), is an adult citizen and residing and domiciled in Covington, Louisiana in St. Tammany Parish.

2.

Made Defendant herein is the City of New Orleans, which, upon information and belief is a municipality of the State of Louisiana.

## JURISIDICTION AND VENUE

3.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Mr. Hamilton's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 *et seq.* Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the state law claims arise out of the same case and controversy giving rise to the federal claims stated herein.

4.

Venue is proper in this the United States District Court for the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to Mr. Hamilton's claims occurred in within the Eastern District of Louisiana in Orleans Parish.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.

Mr. Hamilton's conditional offer of employment was rescinded on January 26, 2021.

6.

Mr. Hamilton filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 14, 2021, ("the Charge") against City of New Orleans for discrimination based on sex. The charge was timely filed within 300 days of the adverse employment action.

7.

The EEOC issued a Notice of Right to Sue on March 28, 2023.

8.

Mr. Hamilton has exhausted his remedies with the EEOC therefore Mr. Hamilton has fully complied with all prerequisites to jurisdiction in this Court pursuant to Title VII of the Civil Rights Act of 1964.

## FACTS

9.

Mr. Hamilton is a thirty-five -year-old transgender male who has made a full transition from the female gender to the male gender.

10.

Mr. Hamilton applied for a position with the New Orleans Police Department on June 17, 2020 via online application submission.

11.

On June 18, 2020, NOPD police recruiter Shana Parker contacted Mr. Hamilton and asked him to schedule a time to take the Civil Service Exam.  On that same date, Mr. Hamilton scheduled, took, and passed the Civil Service Exam.

12.

Mr. Hamilton took a physical agility test on July 30, 2020.  He passed the physical agility exam and advanced to the next level.  Only four of six or seven of the applicants who passed the agility test.

13.

During the preliminary process, Mr. Hamilton became friends with a heterosexual male co-applicant.

14.

On August 1, 2020, Mr. Hamilton received an email from NOPD employee Latrice Lattimore, the NOPD Administrator of Recruiting, notifying him that his background screening had begun and that the process would take no more than 30 days.

15.

Within four days of receiving Ms. Lattimore's email, Mr. Hamilton uploaded his high school transcripts, his employment history for a period of ten (10) years, and employment references for the NOPD's review.

16.

On August 4, 2020, Mr. Hamilton participated in a virtual interview with an NOPD hiring panel via Zoom with four NOPD panelist who concluded the interview in approximately thirty (30) minutes and passed Mr. Hamilton on to the next phase of the hiring process.

17.

Shortly thereafter, Mr. Hamilton passed a required voice test for the NOPD.

18.

In late August 2020, Mr. Hamilton consistently contacted Ms. Lattimore and Investigator Reno Bax, an NOPD employee in the Recruitment and Application Division, regarding his NOPD application, the hiring process, and all documents and interviews required for same.

19.

On December 14, 2020, Mr. Hamilton was given a Conditional Offer of employment for a position with NOPD, conditioned on the passing of both a psychological and medical exam.

20.

Mr. Hamilton was required to sign a release acknowledging that any documents generated in connection with the psychological and medical exams would be the property of the NOPD.

21.

Mr. Hamilton took and passed the medical examination administered by the NOPD which confirmed that Mr. Hamilton was a transgender male applicant.

22.

On December 23, 2020, Mr. Hamilton participated in an in-person psychological exam with NOPD psychologist, Dr. Kathryn Lawing.

23.

Prior to participating in the psychological exam, Mr. Hamilton was required to sign an Acknowledgment of Procedures for Psychological Evaluation: Informed Consent (the "Acknowledgement of Procedures Agreement").

24.

Per the Acknowledgement of Procedures Agreement, Mr. Hamilton participated in a series of psychological tests administered by Dr. Lawing.  The test included both standardized tests as well as an interview with Dr. Lawing.

25.

During the psychological exam, Mr. Hamilton was asked a series of questions related to his transition and status as a transgender male by Dr. Lawing, including but not limited to inquiries about his parents' and spouse's feelings about his transition, how his transition affected his life, had he seen a counselor for his transition, and several other questions specifically probing issues related to his status as transgender male.

26.

Following the psychological evaluation with Dr. Lawing, Mr. Hamilton spoke with a heterosexual co-applicant colleague and learned that he was not asked any questions during his psychological exam / interview related to being a heterosexual male, how his status as a heterosexual male affected his life, had he seen a provider for being a heterosexual male, and so forth.

27.

Following this psychological exam and medical evaluation, which confirmed Mr. Hamilton's status as a transgender male, Mr. Hamilton began to encounter problems with his onboarding process, problems that did not occur for Mr. Hamilton's co-applicant.

28.

After the NOPD confirmed Mr. Hamilton's transgender status in the medical and psychological examinations, Mr. Hamilton began to have trouble with the final application process.

29.

NOPD advised Mr. Hamilton that it now needed additional very specific military medical records, and employment records that exceeded ten years of employment history. Mr. Hamilton was never told why the NOPD needed these additional records.

30.

Mr. Hamilton worked diligently to obtain the additional military medical records from the U.S. Army. He sent the records to the NOPD piece by piece as he received them. Mr. Hamilton went so far as to send NOPD recruitment mailing labels of his requests to the U. S. Army for the same.

31.

Despite Mr. Hamilton's documented efforts to obtain the military records requested, the NOPD did not wait for Mr. Hamilton to receive and produce this documentation.

32.

Mr. Hamilton had not retrieved all the requested documents and records from the military at the time that he was informed that the City/NOPD was revoking his offer of employment. At the time the NOPD revoked the employment offer, Mr. Hamilton had only produced one sheet of paper that he had found in his personal records related to his military career as Brittany Hamilton – prior to his transition.

33.

NOPD withdrew Mr. Hamilton's Conditional Offer of Employment for the stated reason that he failed the psychological and behavioral characteristics of the exam.

34.

During the proceedings with the EEOC, NOPD told the EEOC that Dr. Lawing found Mr. Hamilton to be dishonest as it related to his discharge from the military.  The NOPD's reason is pretextual.

35.

At the EEOC, despite every opportunity, the NOPD never denied that questions about his transition were asked of Mr. Hamilton in the psychological exam and a part of the hiring process. Instead, the NOPD informed the EEOC that Mr. Hamilton was not hired due to the fact that he was not qualified to be a police officer.

36.

In informing the EEOC that Mr. Hamilton was not qualified to be a police officer, the NOPD relied on pretextual reasons.

37.

The NOPD informed the EEOC that one reason it did not hire Mr. Hamilton was because Mr. Hamilton was dishonest about his reasons for leaving the U. S. Army in 2009. Mr. Hamilton informed Dr. Lawing that he had meningitis. The Army file states that Mr. Hamilton left for headaches and chronic sinus disease."

38.

Notwithstanding the foregoing, the NOPD contradictorily told the EEOC that "[a]ny delay in the hiring process was caused by the applicant's failure to provide his full military records when

requested, so that Dr. Lawing could corroborate Hamilton's version of his military service." As such, Dr. Lawing did not have Mr. Hamilton's complete military file to corroborate anything at the time that Mr. Hamilton's offer of employment was terminated.

39.

Another pretextual reason offered by the NOPD to the EEOC for its reason not to hire Mr. Hamilton was that Mr. Hamilton 'had a history of ignoring years of unpaid medical bills.' Mr. Hamilton would suggest that there exist several heterosexual police officers on the NOPD with unpaid bills as well as medical bills.

40.

On information and belief at the time of the NOPD's refusal to hire Mr. Hamilton, there were no known transgender police officers on NOPD's police force.

41.

The NOPD acted in an unlawful discriminatory manner in its hiring practices related to Mr. Hamilton's application for employment.

42.

Mr. Hamilton submits that the NOPD was motivated to revoke Mr. Hamilton's offer of employment, due to his transgender status which was revealed to the NOPD in Mr. Hamilton's medical and psychological examination.

43.

Being a transgender applicant is safe and should not be considered and/or discussed in the hiring process for a police officer recruit.

44.

In addition to the foregoing, NOPD breached its contract and/or acted in negligence with Mr. Hamilton in the Acknowledgement of Procedures for Psychological Evaluation: Informed Consent.

45.

The Acknowledgement of Procedures Agreement informed Mr. Hamilton of the privacy of the psychological exam. Specifically, it provided that the psychological report could be forwarded to only three individuals: (1) Chief of Commission's Recruitment Division, (2) the NOPD superintendent, or his/her designee, and (3) the NOPD Consent Decree Monitor.

46.

Notwithstanding the foregoing, the NOPD provided the EEOC with a copy of Mr. Hamilton's psychological exam results in violation of the Acknowledgement of Procedures Agreement.

47.

Per the Acknowledgement of Procedures Agreement, Mr. Hamilton was required to waive all access and rights to psychological testing data as well as the report of the evaluation.

48.

To date, the NOPD has not provided Mr. Hamilton with a copy of the exam results, despite requests for a copy of same. Yet the NOPD readily produced the report to the EEOC without Mr. Hamilton's consent and in violation of the Acknowledgement of Procedures Agreement.

49.

Mr. Hamilton has suffered harm due to the NOPD's breach of the Acknowledgement of Procedures Agreement, as he was at a disadvantage at the EEOC. Because he was not in possession

of all documents cited by and relied upon by the NOPD in its EEOC response as the reason for their decision not to hire him, Mr. Hamilton was not able to provide the EEOC with any meaningful and informed reply.

50.

On May 31, 2023, undersigned counsel contacted counsel for the NOPD and asked for the psychological exam results informing her the EEOC would not release these documents.

## CLAIMS FOR RELIEF

51.

Mr. Hamilton suffered economic damages, including the costs associated with loss of wages. Further, Mr. Hamilton suffered non-economic damages. Finally, Mr. Hamilton seeks declaratory relief.

For the reasons set forth herein, the NOPD violation of federal law when it rescinded Mr. Hamilton's employment offer. As a result, Mr. Hamilton has sustained damages and is entitled to recover compensation for back pay, front pay, lost benefits, loss of value of retirement plan, compensation for emotional distress and anxiety, liquidated/punitive damages (where applicable), attorneys' fees, costs, and such other legal and / or equitable relief to which he may be entitled as a matter of law.

## Count One:
## Violation of Title VII of the Civil Rights Act of 1964
52.

Mr. Hamilton reasserts each of the allegations set forth throughout the entirety of the Complaint.

53.

Title VII of the Civil Rights Act bars an employer from discriminating against an employee on the basis of sex, including discrimination based on the employee's gender or transgender status.

54.

By implementing a psychological exam protocol designed to single out transgender applicants, Defendant violated Title VII of the Civil Rights Act of 1964.

55.

By refusing to hire Mr. Hamilton due to his protected status, Defendant violated Plaintiff's rights under Title VII. Defendant intentionally treated Plaintiff differently and discriminated against him, despite Mr. Hamilton being qualified for the position he applied for.

56.

After learning of his transgender status, the NOPD revoked its conditional offer of employment from Mr. Hamilton and refused to hire Mr. Hamilton.

57.

Mr. Hamilton submits that as a result of Defendant's willful act and / or act of wanton disregard in rescinding his employment offer, for each and / or all of the reasons set forth herein, Defendant is liable to Mr. Hamilton for all damages he sustained which are recoverable under Title VII, including his monetary losses, an amount in damages, interest on all sums due, court costs, attorneys' fees, and injunctive relief.

## Count Two: Breach of Contract

58.

Mr. Hamilton reasserts each of the allegations set forth throughout the entirety of the Complaint.

59.

As part of the Hiring Process, Mr. Hamilton entered into an Agreement titled: "Acknowledgement of Procedures for Psychological Evaluation: Informed Consent" With the NOPD.

60.

NOPD breached this Agreement by providing the results of the psychological exam to the EEOC in violation of the Agreement.

61.

This breach has caused Mr. Hamilton damage as he has not been afforded the opportunity to see the exam results and remained at a disadvantage from the EEOC.

## Count Three: Negligence – Violation of Privacy Rights

62.

Mr. Hamilton reasserts each of the allegations set forth throughout the entirety of the Complaint.

63.

NOPD failed to protect Mr. Hamilton's privacy rights when it disseminated the results of the psychological exam.

## Additional and Injunctive Relief

64.

Mr. Hamilton reasserts each of the allegations set forth throughout the entirety of the Complaint and submits that he is seeking injunctive relief as a remedy for the aforementioned cause of action brought pursuant to Title VII of the Civil Rights Act of 1964.

65.

Mr. Hamilton is seeking Declaratory Relief from this Court to determine that the questions asked of Mr. Hamilton in the psychological examination, related to his protected status as a transgender, are unconstitutional in violation of the Civil Rights Act of 1964 and its expansion to protect transgender employees in the landmark *Bostick* decision.

66.

The controversy regarding NOPD's probe into Mr. Hamilton's transgender status creates a controversy that is of a justiciable nature.

67.

Mr. Hamilton seeks injunctive relief against the NOPD's discriminatory hiring practices that are discriminatory in nature as well as have a disparate impact on protected applicants. Mr. Hamilton requests relief including but not limited to, a review of the hiring practices of NOPD and an Order requiring NOPD to refrain from asking questions related to applicant's status as a transgender applicant as a component piece of the NOPD hiring process.

68.

NOPD was given the opportunity to rebut Mr. Hamilton's claims at the EEOC and NOPD did not deny that Mr. Hamilton was asked very specific and detailed questions about Mr. Hamilton's transition and status as a transgender male as a part of its hiring process.

69.

Mr. Hamilton submits that the public interest in the injunctive relief sought herein is significant.

## DAMAGES

Mr. Hamilton has suffered damages as a result of the intentional and negligent actions as more fully stated herein. These damages, which will be proven at trial, include, but are not limited to, the following:

A.      Past lost wages;

B.      Past loss of employment benefits;

C.      Future lost wages and employment benefits;

D.      Past and Future Emotional distress, mental anguish and loss of enjoyment of life;

E.      Attorneys' Fees;

F.      Costs; and

G.      All other equitable relief to which Mr. Hamilton may be entitled.

## DEMAND FOR JURY TRIAL

Mr. Hamilton requests that this matter proceed before a trial by jury.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff Britton Hamilton requests judgment be entered against Defendants and that the Court grant the following:

a.   Plaintiff requests a trial by jury.

b.   Wherefore Plaintiff requests judgment be entered against Defendants and that the court grant the following:

    a.   Declaratory relief;

    b.   Injunctive relief;

    c.   Judgment against the Defendant for Plaintiff's asserted causes of action;

d.   Award of compensatory damages;

e.   Award of general damages;

f.   Award of costs and attorneys' fees as provided for by statute;

g.   Award of economic losses, including but not limited to back pay, and lost benefits, as established at trial;

h.   Pre and post-judgment interest; and

i.   An order for such other and further relief, at law or in equity, to which Mr. Hamilton may be justly entitled.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully Submitted,

**Sternberg, Naccari & White, LLC**

**CHELSEA B. CUSIMANO**, La. Bar No. 34857 **(T.A.)**
**M. SUZANNE MONTERO**, La. Bar No. 21361
**KATHERINE B. WELLS,** La. Bar. No. 36077
**HALEY JUPITER,** La. Bar. No.  40416
935 Gravier Street, Suite 2020
New Orleans, Louisiana 70112
Telephone: 504.324.2141
Facsimile:  504.534.8961
cbc@snw.law | suzy@snw.law | katherine@snw.law |
haley@snw.law
*Counsel for Complainant, Britton Hamilton*